IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:06CV6-MU

ZURICH AMERICAN INSURANCE )
COMPANY, )
 )
 )
 Appellant, )
 ) O R D E R
 v. )
 )
LAURA TESSLER, ADMINISTRATOR )
FOR THE ESTATE OF LAURA )
DUNNAGAN, )
 Appellee. )
_____)
 )
In re: )
 )
J.A. JONES, INC., et al., ) Case No.: 03-33532
 ) Chapter 11
 Debtors. ) Jointly Administered
_____)

**THIS MATTER** comes before the Court on the appeal of Zurich American Insurance Company from the December 20, 2005, Order of the Bankruptcy Court granting Appellee's Motion to Extend Claims Bar Date to Permit Filing of Late-Filed Proof of Claims and Other Relief. Having reviewed the briefs of both parties and the record on appeal, it appears that the Order of the Bankruptcy Court should be **AFFIRMED**.

## I - BACKGROUND

Appellee's decedent, Laura Elizabeth Dunnagan ("Dunnagan") died on January 22, 2003 from injuries she received in a chain collision on Interstate 77, north of Charlotte ("the I-77 accident"). Rea Construction Company ("Rea"), one of the debtors in the underlying bankruptcy action, was responsible for planning and maintaining safety in the highway construction work zone

where the collision occurred. In September 25, 2003, Rea, along with its parent corporation, J. A. Jones, Inc., filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code. Rea did not list Appellee among its known creditors, and Appellee never received notice of the impending bankruptcy.

At the time of the I-77 accident, Kipp Cheek ("Mr. Cheek") served as the project manager for Rea. In a hearing before Judge Whitley in the Bankruptcy Court, Mr. Cheek testified that he was aware of the I-77 accident and kept a file on this accident because he "anticipated" litigation. Mr. Cheek went so far as to take a copy of this file, and only this file, with him when he left Rea's employ, for the exclusive stated purpose that he might need that file to prepare for litigation. Further, the Charlotte Observer ran several articles highlighting the dangers of the I-77 construction, both before and after the I-77 accident; Mr. Cheek stated that he was familiar with these articles as well, and even gave comments for some of them. He also testified that he had discussed the possibility of litigation with Rea's claims department, and later with an attorney hired to investigate the issue.

As required by its insurance contract, Rea reported the accident to its liability insurer, Appellant Zurich American Insurance Company ("Zurich"). Zurich opened its own file, retained counsel, and investigated the accident to determine liability, including the unusual step of hiring an accident reconstruction expert. Ultimately, it concluded that Rea was not liable; however, Zurich kept its file on the accident open until after the claims bar date in 2004, as it "had no way to be certain what claims would be filed" in the bankruptcy matter until the bar date had passed.

Prior to Appellee's intervention, Zurich entered into a settlement agreement with the bankruptcy debtors ("the Zurich settlement"), governing, among other things, Zurich's obligation to fund deductible amounts applicable under Zurich policies. This settlement followed substantial

disputes over the manner in which claims covered by Zurich policies were to be handled going forward, and limited Zurich's responsibility to defend claims under the $5 million deductible. The Bankruptcy Court approved the Zurich settlement as part of the debtor's Chapter 11 Plan.

After learning of the bankruptcy, Appellee filed a motion with the Bankruptcy Court on December 9, 2004, to extend the claims bar date. After briefly lifting the bankruptcy stay to allow Appellee to file its tort claim in state court ("the state tort action"), the Bankruptcy Court ultimately granted Appellee's motion on December 20, 2005, allowing Appellee to proceed with its state tort action. The Bankruptcy Court specifically held that the Zurich settlement did not apply to Appellee's claims, but declined to rule on whether Zurich would be obligated to advance funds below the $5 million deductible. Zurich filed the instant appeal, and a motion to stay pending appeal. This Court denied the motion to stay on April 12, 2006, and Zurich is currently paying for Rea's defense in the state tort action.

## II- STANDARD OF REVIEW

Findings of fact made by the Bankruptcy Court are reviewed by this Court for clear error. Fed. R. Bankr. P. 8013. Conclusions of law, on the other hand, are reviewed *de novo*. In re Kielish, 258 F.3d 315, 319 (4th Cir. 2001). Mixed questions of law and fact are also reviewed *de novo*. In re Litton, 330 F.3d 636, 642 (4th Cir. 2003). A bankruptcy court's decision to abstain is reviewable under an abuse of discretion standard. In re Queen, 148 B.R. 256, 258 (S.D.W.Va. 1992).

## III- DISCUSSION

### A) Zurich's standing to bring this appeal

As a preliminary matter, Appellee challenges Zurich's standing to bring this appeal at all. A party asserting standing on appeal must show that they are "directly and adversely affected pecuniarily by the bankruptcy order." In re Urban Broadcasting Corp., 401 F.3d 236, 244 (4th Cir.

2005). Under this standard, an appellant counts as "aggrieved" if the order "diminishes his property, increases his burdens, or impairs his rights." Land-O-Sun Dairies, Inc. v. Pine State Creamery Co., 200 B.R. 125, 126-27 (E.D.N.C. 1996), citing Travelers Ins. Co. v. H.L. Porter Co., Inc., 45 F.3d 737, 741 (3rd Cir. 1995). Here, though any damage from the resolution of the state tort action may be speculative, Zurich is being forced to actively defend that action in state court due to its contractual obligations to Rea. This on-going expenditure of resources certainly qualifies as a "direct" and "pecuniary" adverse effect, and a diminishment of property. Therefore, Zurich has standing to bring this appeal.

### B) Appellee as a known creditor that should have received notice

Under 11 U.S.C. § 521, debtors have a duty to schedule all known creditors such that they may receive official or formal notice of a bankruptcy. A creditor is considered "known" if the creditor's identity is either actually known or reasonably ascertainable by the debtor. See Tulsa Prof'l Collection Serv., Inc. v. Pope, 485 U.S. 478, 490 (1988) (holding that actual notice is required for known or reasonably ascertainable creditors). A known claim, and thus a known creditor, may be considered "reasonably ascertainable" if it arises "from facts that would alert the debtor to the possibility that a claim might be reasonably filed against it." In re XO Communications, Inc., 301 B.R. 782, 794 (S.D.N.Y. 2003). What qualifies as "reasonable" for these purposes will vary with the facts of the individual case. Id.

Here, Zurich does not attempt to deny that Rea had notice of the accident, but argues that Appellee was not a known creditor because Appellee never specifically contacted Rea or Zurich concerning a potential law suit. No such "contact" requirement exists in any case law, however; it is only required that the debtor either actually know of the potential claim or be able to discover the claim through reasonably diligent efforts. Tulsa Prof'l Collection Serv, 485 U.S. at 490. In this case,

Rea's own project manager stated that he "anticipated" litigation and carried a file on the I-77 accident with him when he left Rea's employ to prepare himself in case of such litigation. A copy of this very same file remained in Rea's possession at the time of the bankruptcy. Further, Zurich itself, along with Rea's claims department, investigated the accident extensively, and kept its own file open past the claims bar date. The fact that Rea and Zurich concluded that Rea ultimately had no liability is of no moment; actual liability is not at issue here. Regardless of Rea's own assessment of the ultimate outcome of any litigation, there are clearly enough facts to support the Bankruptcy Court's conclusion that Rea had actual knowledge of Appellee's claim.

Zurich's own statements dispel any doubt that a lawsuit was foreseen in this case. In its reply brief, in reference to its own file on the I-77 Accident, Zurich states, "it was closed *after* the bar date in this bankruptcy. Until the bar date passed, Zurich had no way to be certain what bankruptcy claims would be filed." Docket No. 11 at 11 (emphasis in original). This statement is telling; Zurich intentionally left open its file on the I-77 accident until after the claims bar date (yet before Appellee actually attempted to bring its claim) because Zurich foresaw the possibility that Appellee might file a claim in the bankruptcy. It is extremely difficult to understand how a party who freely admits that it foresaw a possibility that a particular claim would be filed at the onset of bankruptcy can assert that the possessor of that claim was an unknown party at that time. The notice requirement is not a difficult one to satisfy; there is no reason why providing formal notice to Appellee would have imposed any hardship on Rea justifying its failure to notice Appellee.

Contrary to Zurich's arguments, this ruling does not transform all parties involved in car accidents near construction sites into known creditors of the construction company. In this case, the combination of the circumstances, including, as Mr. Cheek noted, the heightened possibility of litigation due to multiple deaths and Rea's familiarity with the several Charlotte Observer articles

prior to the accident highlighting the unnecessary dangerousness of the construction zone, all uphold the Bankruptcy Court's conclusions that here, Rea knew or should have known that a claim by Appellee was possible. Therefore, Appellee's identity was known or reasonably ascertainable, and Appellee was entitled to notice of Rea's bankruptcy.

### C) The Bankruptcy Court's failure to determine applicability of the Zurich Settlement to the Estate's claims

As a final issue, Zurich claims that the Bankruptcy Court erred by "abstaining" to determine the applicability of the Zurich Settlement to Appellee's claims. Given the time and energy invested in creating the Zurich Settlement, Zurich's concerns are understandable. However, this interpretation misconstrues the Bankruptcy Court's ruling. The Bankruptcy Court specifically ruled that the Zurich Settlement does not apply to Appellee's claims. What it abstained from deciding was whether or not Appellee would have any rights against Zurich as a third-party beneficiary to the original contract or under applicable state law.

Under 28 U.S.C. § 1334(c)(1), a bankruptcy court may abstain from hearing a proceeding related to a case brought under Title 11 "in the interests of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1) (West, Westlaw through 2005 amendments). Here, the issues from which the Bankruptcy Court abstained are purely issues of state contract law and have no direct federal nexus. The Bankruptcy Court did not abuse its discretion by leaving these issues to the state court for decision. Further, any decision by the Bankruptcy Court concerning the outcome of the state court case would be premature, at best.

**IT IS THEREFORE ORDERED** 

**AFFIRMED** as to all issues on appeal.

Graham C. Mullen
United States District Judge

Signed: June 20, 2006